IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JASON MATHISON<br><br>Plaintiff,<br><br>vs.<br><br>CLC CONSUMER SERVICES and LITTON LOAN SERVICES,<br><br>Defendants, | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 1:10cv00079 |

This matter is before the court on a partial motion for summary judgment filed by defendant CLC Consumer Services, a motion for summary judgment filed by defendant Litton Loan Services, and a renewed motion to amend complaint filed by plaintiff Jason Mathison. (Dkt. Nos. 64, 66, and 87.) A hearing on the defendants' motions was held on January 31, 2013. At the hearing, plaintiff Jason Mathison was represented by Matt G. Wadsworth. Defendant CLC Consumer Services ("CLC") was represented by Lance H. Locke, and defendant Litton Loan Services ("LLS") was represented by Daniel S. Ivie. Before the hearing, the court considered the memoranda submitted by the parties. After the court took the motion under advisement, plaintiff submitted his renewed motion to amend his complaint on February 5, 2013. The court has further

1

considered the law and facts relating to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff purchased a real property duplex located in the City of North Salt Lake (the "Duplex Property") in April 2004. In connection with the purchase of the Duplex Property, plaintiff executed a deed of trust and a promissory note in the amount of $130,000 with First Franklin Financial Corp. as the lender. ("Deed of Trust," Aff. of Kevin Flannigan, Ex. A.)

In June 2006, plaintiff took out a home equity loan of $38,000 secured by the Duplex Property. ("Home Equity Line of Credit Agreement," Aff. of Kevin Flannigan, Ex. B; "Subject Trust Deed," Aff. of Kevin Flannigan, Ex. C.) Plaintiff alleges that he lived in the home when he took out the loan and that he used the loan to pay off consumer debt and to renovate the Duplex Property.

On November 6, 2008, plaintiff worked with Integrated Title Services ("ITS") to enter into a short sale agreement. The terms of the agreement were approved by all of the necessary parties, one of which was Popular Mortgage Servicing, Inc., which then held the home equity loan. The short sale agreement was intended to satisfy the amount plaintiff owed to Popular Mortgage Servicing, Inc. on the home equity loan. (Depo. of Jason Mathison, 69-70; see also "Popular Mortgage Servicing, Inc. Settlement Letter," Depo. of Jason Mathison, Ex. 4.) Several days after the short sale took place, ITS sent plaintiff a letter informing him that his loan had been sold by Popular Mortgage Servicing, Inc. to PNC Bank and that the proceeds of the "[s]hort [s]ale payoff funds" would be received by PNC Bank. ("ITS Transfer Letter," Depo. of Jason

Mathison, Ex. 5; see also Depo. of Jason Mathison, 29.) CLC is a subsidiary of PNC Bank.

Despite plaintiff's understanding from his communication with Popular Mortgage Servicing, Inc. that the short sale would satisfy the balance on the home equity loan, plaintiff's credit report was negatively impacted by the transaction. Plaintiff immediately hired Lexington Law Firm, a credit report repair agency, to dispute the negative reports and repair his credit. (Depo. of Jason Mathison, 35.) Plaintiff began receiving phone calls from CLC in which CLC sought to collect a deficiency on the home equity loan (Depo. of Jason Mathison, 38-39.) In January 2009, plaintiff received notice that CLC was transferring the service of his home equity loan to LLS, and that any outstanding balance on the loan should be paid to LLS. (Compl., ¶13.) Upon receiving this notice, plaintiff promptly contacted CLC to inform it that no such balance existed. (Id.) CLC sent a letter on February 2, 2009, informing plaintiff that he was correct and that the loan was "paid-in-full." ("CLC's February 2 Letter," Compl., Ex. A.) Prior to receiving this letter, plaintiff received 30 to 40 telephone calls from CLC trying to collect on the loan that no longer existed. (Depo. of Jason Mathison, 38.)

One week later, LLS sent a notice to plaintiff informing him that LLS was servicing the home equity loan and that unless he responded within 30 days to notify LLS that he disputed the loan, LLS would assume "the validity of the debt." ("LLS' February 9 Letter," Compl., Ex. B.) Plaintiff responded to the notice in a letter sent via fax on February 10, 2009. The letter informed LLS that plaintiff no longer owned the Duplex Property that had been associated with the loan and that the loan was paid-in-full. (February 10 Letter, Compl., Ex. C.) Plaintiff attached a copy of CLC's February 2 Letter as evidence that the loan was satisfied and no longer existed.

LLS persisted in its claim that plaintiff had an outstanding balance on his loan and proceeded to threaten acceleration of the loan and foreclosure on the Duplex Property, which plaintiff had already informed LLS he no longer owned. Plaintiff contested the existence of the debt for roughly a year. During that period, he received one or two phone calls a day from LLS attempting to collect on the home equity loan, which plaintiff continued to dispute. (Depo. of Jason Mathison, 77.)

After plaintiff disputed the alleged deficiency balance and the negative credit reports that resulted from LLS' insistence on the existence of the deficiency for nearly a year, LLS relented. In a letter dated February 25, 2010, LLS stated that it had contacted an employee of CLC who advised LLS "that the line [of credit] was released when the short sale funds were processed." ("LLS' February 25 Letter," Compl., Ex. F.) The letter went on to explain that "according to the letter from CLC dated February 2, 2009, the account was not updated to reflect 'paid in full' until February 2009" and as a result, "the loan was transferred from CLC to [LLS] as an active loan since there was no notification of the loan's paid in full status." (Id.) LLS then stated that "in reliance upon the information obtained from CLC by [LLS]" it would update the account to reflect that "the referenced loan was transferred to [LLS] in error." (Id.)

During the period between December 31, 2008, and January 21, 2010, plaintiff's credit report was negatively impacted by the assertions of CLC and LLS that plaintiff owed money. ("Redacted Credit Report," Compl., Ex. E.) Plaintiff alleges that he was harassed by the continual contact first from CLC, and then from LLS, because the contact occurred while he was at work, with his family, and while hosting friends, resulting in his humiliation and

4

embarrassment. (Compl., 12-13.) Because of his poor credit rating, plaintiff was denied credit when trying to purchase cell phones and cell phone service. (Compl., 12; Depo. of Jason Mathison, 50-51.) In addition, because of the negative impact that the defendants had on his credit score, plaintiff was denied credit when trying to purchase a television from RC Willey. (Compl., 12; Depo. of Jason Mathison, 51-52.) Plaintiff also experienced credit problems when attempting to purchase a car. (Compl., 12.) Certain businesses would not accept checks from the plaintiff because of his low credit score. (Compl. 12; Depo. of Jason Mathison, 42, 54-55.) American Express lowered plaintiff's credit availability from $25,000 to $500. (Compl., 12; Depo. of Jason Mathison 55-56.) This reduction of credit availability was disruptive to defendant's livelihood. Plaintiff was an entrepreneur at the time and often drew on that line of credit to "start and launch businesses." (Depo. of Jason Mathison, 55.) The loss of that avenue of funding was detrimental to plaintiff's entrepreneurial activities. Plaintiff's business reputation was also adversely affected by the continuous telephone calls, which would often happen during business meetings. (Compl. 13; Depo. of Jason Mathison, 43-46.) Furthermore, as a result of his low credit score, vendors would only do business with plaintiff on a cash basis. (Compl. 13.) Because of these various injuries suffered as a result of the defendants' actions, plaintiff filed a complaint against both CLC and LLS on May 21, 2010. (Dkt. No. 1.)

## DISCUSSION

Plaintiff is suing the defendants for violations of the Fair Debt Collection Practices Act (causes of action 1-4), violations of the Fair Credit Reporting Act, (causes of action 5, 6, and 9), libel (cause of action 7), defamation (cause of action 8), and breach of contract (cause of action

10).[1] LLS has filed a motion for summary judgment or, alternatively, partial summary judgment. (Dkt. No. 66.) CLC has filed a motion for partial summary judgment. (Dkt. No. 64.) "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Klen v. City of Loveland, Colo., 661 F.3d 498 (10th Cir. 2011.) citing Fed. R. Civ. P. 56(a). The court now turns to the various arguments cited by the defendants in support of their motions.

### I. Causes of Action under the Fair Debt Collection Practices Act (1-4)

Plaintiff is suing the defendants for violations of 15 U.S.C. § 1692d-g (causes of action 1-4).[2] Both LLS and CLC move for summary judgment on these causes of action.

#### a. LLS - Fair Debt Collection Practices Act

LLS argues that none of the causes of action arising under the Fair Debt Collection Practices Act ("FDCPA") are valid because the plaintiff's loan should not be classified as consumer debt protected under the FDCPA. The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

---

[1] The claim for breach of contract was dismissed as to Litton on Aug. 23, 2012, (Dkt. No. 63.)

[2] 15 U.S.C. § 1692d prohibits debt collectors from engaging in conduct "the natural consequence of which is to harrass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692e prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect and debt." 15 U.S.C. § 1692g requires that a debt collector, once properly notified that the debt is in dispute, must cease collection of the debt until the debt collector obtains verification of the debt.

15 U.S.C. § 1692a(5).

    LLS contends that "the undisputed facts and evidence demonstrate that the loan incurred by Plaintiff is not a consumer debt" and that the "claims under the FDCPA fail as a matter of law." (LLS' Mem. in Supp. of Mot. for Summ. J., 11.) LLS sets forth a number of arguments to demonstrate that the Duplex Property was investment property rather than consumer property. For instance, LLS argues that the plaintiff did not live in the Duplex Property when he purchased it in 2004, when he obtained the home equity loan in 2006, or when he sold the property in 2008. (Id., 11-12; citing Depo. of Jason Mathison, 17, 19-20, 114, 126.) LLS also argues that plaintiff only lived in the property from January 2008 to June or July 2008. (LLS' Reply to Pl.'s Resp. to LLS' Mem. in Supp. of Mot. for Summ. J., 31.) Additionally, LLS contends that the property was identified in a divorce decree as investment property. (LLS' Mem. in Supp. of Mot. for Summ. J., 12-14.) LLS further contends that the Duplex Property was investment property by relying on the fact that plaintiff often had renters in portions of the Duplex Property and that he received rental payments from them, which he reported on his tax returns as income. (Id.) LLS maintains that these facts indicate that the Duplex Property was investment property and that the home equity loan, because it was taken out on investment property, was not a consumer loan.

    Plaintiff directly disputes LLS' contention that he did not live in the Duplex Property when he took out the home equity loan. Plaintiff asserts, to the contrary, that he resided in the Duplex Property when he took out the loan. (Pl's Resp. to Mot. for Summ. J. Filed by LLS, 16.) Furthermore, portions of the plaintiff's deposition testimony imply that plaintiff lived in the

Duplex Property longer than the few months indicated by LLS. (Depo. of Jason Mathison, 17.) Plaintiff thus maintains that the Duplex Property was not investment property. Plaintiff rebuts the argument that the home equity loan was not a consumer loan by pointing out that he used the loan to pay off other consumer debts and to fix up the property which he claims to have been considering as his personal residence. (Pl's Resp. to Mot. for Summ. J. Filed by LLS, 16.) Plaintiff also argues that his home equity loan qualified as consumer debt under the Truth in Lending Act (TILA), lending credence to his assertion that the home equity loan should also be considered consumer debt under the FDCPA.[3]

The court finds that LLS has failed to show that there is no genuine issue of material fact as to whether the loan at issue was a consumer debt. Specifically, LLS has failed to show that no genuine issue of material fact exists as to whether the plaintiff used the Duplex Property and the home equity loan "primarily for personal, family, or household purposes." 15 U.S.C. § 1692(a)(5). As noted by the Ninth Circuit, case law defining consumer debt under the FDCPA is rare. Bloom v. I.C. System, Inc., 972 F.2d 1067, 1068 (9th Cir. 1992). Bloom states that when "classifying a loan, courts typically, 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.'" Id. citing Tower v. Moss, 625 F.2d 1161, 1166 (5th Cir. 1980). This court is unable to undertake the task of classifying plaintiff's home equity loan without encountering numerous questions of fact stemming from

---

[3]TILA defines a consumer loan as: "[a transaction] in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h).

direct factual contradictions in the record. Therefore, the court finds that LLS fails to demonstrate that it is entitled to summary judgment on plaintiff's first four causes of action.

### b. CLC - Federal Debt Collection Practices Act

CLC offers three different arguments supporting its motion for summary judgment as to plaintiff's claims under the FDCPA. First, CLC argues that any claims against it under the FDCPA are time-barred by the FDCPA's statute of limitations. Second, CLC argues that it does not qualify as a debt collector under the FDCPA and is thus not liable to plaintiff under the Statute. Third, CLC contends that plaintiff's home equity loan does not qualify as consumer debt under the FDCPA and that plaintiff is not entitled to the statute's protection.

At oral argument, plaintiff stipulated that he did not have any valid causes of action against CLC under the FDCPA. Accordingly, CLC's motion for summary judgment will be granted as to causes of action 1-4.

### II. Causes of Action under the Fair Credit Reporting Act (5, 6, and 9)

Plaintiff is suing defendants for violations of 15 U.S.C. §§ 1681n-o, 1681s(2) under the Fair Credit Reporting Act (FCRA) in causes of action 5, 6, and 9.[4] LLS seeks summary judgment on all three causes of action. CLC seeks summary judgment only on the ninth cause of action arising under 15 U.S.C. § 1681s-2.

### a. LLS - Fair Credit Reporting Act

---

[4] 15 U.S.C. § 1681n creates liability for those who willfully fail to comply with the requirements imposed under the Consumer Reporting Agency subchapter of the FCRA. 15 U.S.C. § 1681n creates liability for negligence in failing to comply with the requirements imposed under the Consumer Reporting Agency subchapter of the FCRA. 15 U.S.C. § 1681s-2 requires furnishers of credit information to provide accurate information.

LLS argues that plaintiff's claims under 15 U.S.C. §§ 1681n-o (causes of action 5 and 6) fail as a matter of law because LLS alleges to have received no notification of the plaintiff's dispute regarding the claimed deficiency from a credit reporting agency. Such notification is a pre-requisite to claims under 15 U.S.C. §§ 1681n-o. See 15 U.S.C. § 1681s-2(b); see also Tilley v. Global Payments, Inc., 603 F. Supp. 2d 1314, 1322 (D. Kan. 2009) (stating that the duties of a furnisher of credit information "are only triggered after the furnisher receives notice of a consumer's dispute from a consumer reporting agency."). Courts throughout the country have affirmed that a furnisher's duty to investigate a credit reporting dispute is triggered "only after the furnisher receives notice of the dispute from a consumer reporting agency, not just the consumer." Aklagi v. Nationscredit Financial, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002).

LLS maintains that it never received notice of plaintiff's dispute from a credit reporting agency. Rather, LLS claims to have only received notice of the dispute from the plaintiff, and therefore argues that its liability was never triggered. (LLS' Mem. in Supp. of Mot. for Summ. J., 18.) Plaintiff directly counters this assertion, citing several instances in which he received notice from Lexington Law Firm of challenges sent on his behalf to a credit reporting agency and notice from LLS of its receipt of an inquiry on his behalf on the same day. (Pl.'s Resp. to Mot. for Summ J. Filed by LLS, 17.) Plaintiff argues that this qualifies as constructive evidence that LLS received notice of his dispute from a credit reporting agency.

LLS' only evidence in support of its claim that it was never notified of plaintiff's dispute by a credit reporting agency is an oral representation made by a representative of LLS. (Aff. of Kevin Flannigan, ¶ 18.) In light of the discrepancy between the scant oral evidence offered by

LLS and the constructive evidence provided by the plaintiff, the court finds a genuine issue of material fact exists as to whether LLS was notified of plaintiff's dispute by a credit reporting agency. Therefore, LLS is not entitled to judgment on plaintiff's fifth and sixth causes of action as a matter of law.

LLS also argues that a portion of plaintiff's cause of action under 15 U.S.C. § 1681s-2 (cause of action 9) must fail as a matter of law. In his ninth cause of action, plaintiff alleges violations of 15 U.S.C. § 1681s-2 without identifying the specific subsections under which he has a cause of action. (Compl., ¶¶ 149-155.) 15 U.S.C. § 1681s-2(b) "creates a private cause of action by a consumer against a furnisher of credit information," Aklagi, 196 F.Supp. at 1192. However, 15 U.S.C. § 1681s-2(a) provides no similar private right of action. Pinson v. Equifax Credit Information services, Inc., 316 Fed. Appx. 744, 751 (10th Cir. 2009). LLS argues that because any claimed causes of action arising under 15 U.S.C. § 1681s-2(a) are not supported by a private right of action, any such claims are barred as a matter of law.

Plaintiff did not respond to this particular argument in his briefing or at oral argument. The court finds that LLS' presentation of the law is sound. Therefore, there is no genuine issue of material fact as to whether 15 U.S.C. § 1681s-2(a) creates a private action. It does not. Plaintiff lacks a private cause of action for any portion of his claims arising under 15 U.S.C. § 1681s-2(a) and LLS is entitled to judgment regarding the ninth cause of action as a matter of law.

    b.  **CLC - Fair Credit Reporting Act**

CLC argues that summary judgment should be decided in its favor concerning plaintiff's ninth cause of action arising under 15 U.S.C. § 1681s-2 because plaintiff's complaint did not specifically refer to any conduct by CLC in its ninth cause of action. CLC contends that the allegations comprising plaintiff's ninth cause of action pertain only to the alleged conduct of LLS, and should therefore be dismissed as to CLC. (CLC's Mem. in Supp. of Mot. for Partial Summ. J., 13.) Plaintiff responds by arguing that CLC's conduct was incorporated into the ninth cause of action by paragraph 149 of the complaint, which realleged and incorporated by reference all the allegations and facts preceding it. (Pl.'s Resp. to Mot. for Summ. J. Filed by CLC, 12; Compl., ¶ 149.) Some of the preceding paragraphs realleged in the ninth cause of action refer to conduct by CLC that violated provisions of the FCRA. For instance, paragraphs 66 and 67 allege that CLC insisted that the incorrect information it had reported to consumer reporting agencies was accurate and complete when in fact it was not. (Compl., ¶¶ 66-67.) Such inaccurate reporting is a violation of 15 U.S.C. § 1681s-2.

The court finds that, because allegations of CLC's conduct were incorporated into the claim by reference, the plaintiff's ninth cause of action survives CLC's motion for summary judgment. Though CLC did not raise the issue, the court also finds that any portions of the action that arise out of 15 U.S.C. § 1681s-2(a) are barred since that subsection of the statute does not create a private cause of action.

### III.     Libel and Defamation (Causes of Action 7 and 8)

Plaintiff is suing both LLS and CLC for libel and defamation. LLS seeks summary judgment on both causes of action. CLC seeks summary judgment on any actions giving rise to

the seventh and eighth causes of action that occurred outside of the statute of limitations for those torts.

### a. LLS - Libel and Defamation

LLS contends that the plaintiff's causes of action for libel and defamation are preempted by the FCRA. LLS relies on 15 U.S.C. § 1681t(b)(1)(F), which provides that, "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." LLS argues that this portion of the FCRA preempts all state causes of action against furnishers of information to consumer reporting agencies. Citing Hasvold v. First USA Bank, N.A., 194 F. Supp. 2d 1228, 1239 (D. Wyo., 2002) (stating that "[t]he plain language of §1681t(b)(1)(F) clearly eliminate[s] all state causes of action against furnishers of information.").

Plaintiff responds by citing Greene v. Capital One Bank, 2008 WL 1858882 (D. Utah 2008), which held that the broad preemption suggested by 15 U.S.C. §1681t(b)(1)(F) is qualified by 15 U.S.C. §1681h(e), which states that a consumer may bring an "action or proceeding in the nature of defamation . . .with respect to the reporting of information against any consumer reporting agency" if the false information is "furnished with malice or willful intent to injure such customer." Plaintiff contends that while a willful and malicious intent to injure was not specifically pled in the seventh (libel) and eighth (defamation) causes of action, the defendants' willful intent to injure was contemplated throughout the complaint. (Pl.'s Resp. to Mot. for Summ J. Filed by LLS, 20.)

The Greene court's holding is in harmony with the statutory construction of the FCRA. As the Greene court explains, 15 U.S.C. § 1681t(b)(1)(F) "applies to statutory claims whereas §1681h(e) applies to certain state common law claims." Greene at 6. Therefore,"[t]he more specific statute, §1681h(e), which deals only with state common law causes of action, is unaffected by the more general statute, § 1681t(b)(1)(F)." Greene at 6; see also Barnhill v. Bank of America, N.A., 378 F.Supp 2d 696 (D.S.C. 2005). As a result, the court finds that the state common law causes of action of libel and defamation are not preempted provided that the defendants harbored a willful or malicious intent to injure the plaintiff. The court finds that defendants' willful intent to injure the plaintiff's credit worthiness with its reports is alleged earlier in the complaint and is incorporated into the seventh and eighth causes of action by reference.[5] (Compl., 137, 142.) Therefore, LLS is not entitled to summary judgment on the seventh and eighth causes of action as a matter of law.

### b. CLC - Libel and Defamation

CLC argues that any of plaintiff's causes of action for libel or defamation arising out of actions which occurred outside of the statute of limitation for libel and defamation are time-barred. Utah Code Ann. § 78B-2-302 provides that an action may be brought within one year

---

[5]Plaintiff's fifth cause of action (violation of 15 U.S.C. § 1681n) alleges that "LLS and CLC on numerous occasions willfully refused to correct Mr. Mathison's credit, and willfully reported and continued to report negative feedback concerning Mr. Mathison's credit to the credit reporting agencies" the natural consequence of which was injury to plaintiff's credit score. (Compl., ¶ 137.) Plaintiff's sixth cause of action (violation of 15 U.S.C. § 1681o) states that "LLS and CLC on numerous occasions willfully refused to correct Mr. Mathison's credit, and willfully reported and continued to report negative feedback concerning Mr. Mathisons's credit to the credit reporting agencies" the natural result of which was injury to Mr. Mathison's credit score. (Compl., ¶ 142.)

for claims of libel. See Utah Code Ann. § 78B-2-302(4). Similarly, a one-year statute of limitation for defamation begins to run in Utah when the defamation is known or reasonably discoverable. Watkins v. General Refractories, Co., 805 F. Supp. 911, 917 (D. Utah 1992). CLC therefore argues that any causes of action arising out of its alleged actions prior to May 21, 2009, are time-barred. (CLC's Mem. in Supp. of Mot. for Partial Summ. J., 14.) In response, plaintiff simply argues that CLC "continued to republish defamatory statements well into 2010. (Pl.'s Response to Mot. for Sum. J. Filed by CLC, 13.)

The court recognizes that there is a one year statute of limitations on libel and defamation and holds that any actions that occurred prior to May 21, 2009, are time-barred according to statute.

**IV.     LLS - Deficiency**

In addition to its arguments discussed above, LLS offers a broader argument in support of its motion to dismiss. LLS contends that there was never an agreement to waive plaintiff's debt following the short sale. (LLS' Mem. in Supp. of Mot. for Summ. J., 19.) Rather, LLS argues that the short sale agreement was conditioned upon the deficiency balance remaining. (Id.) LLS therefore argues that plaintiff's entire complaint must fail as a matter of law because each cause of action depends upon there being no deficiency.

LLS contends that the plaintiff had no discussions with CLC or any other interested party about a remaining deficiency balance after the short sale. (Id., 19-20; Depo. of Jason Mathison, 47, 79.) LLS also cites a letter which CLC sent ITS (the title company involved in the short sale) to support its argument. ("CLC Short Sale Letter," Aff. of Kevin Flannigan, Ex.

F.) LLS quotes the following language in support of its contention that a deficiency balance remained after the short sale:

> CLC Consumer Services will release the mortgage on the above referenced loan for a minimum of $22,399.39. This offer is subject to the following: . . . 7) Jason Mathison acknowledges all terms of the note and understands that the note holder reserves all rights provided in the note will remain enforceable [sic], if allowed by law, including but not limited to, the collection of any deficiency balance.

(Id.; LLS' Mem. in Supp. of Mot. for Summ. J., 19.) LLS further argues that plaintiff has no writing that satisfies the Statute of Frauds to show that he and the interested parties contractually agreed to waive the deficiency on his home equity loan following the short sale.

Plaintiff responds to LLS' insistence of the existence of a deficiency by citing a number of documents indicating that there was an agreement that the proceeds from the short sale of the Duplex Property would satisfy the balance of plaintiff's loan. First, plaintiff invokes the letter sent to him by LLS on February 25, 2010, in which LLS acknowledged that the alleged loan was transferred to LLS in error because it was considered "paid in full" by CLC. ("LLS' February 25 Letter," Compl. Ex. F.) Plaintiff also cites the letter sent by CLC acknowledging that the loan was "paid-in-full" and thanking him for completing payment on his home equity credit line. ("CLC's February 2 Letter," Compl., Ex. A.) Plaintiff cites to a letter from Popular Mortgage Servicing, Inc. (the servicer of plaintiff's loan at the time of the short sale), which stated that "Popular Mortgage Servicing Incorporated will accept a minimum of $22,563.40 to settle" plaintiff's home equity loan. ("Popular Mortgage Servicing, Inc. Letter," Pl.'s Resp. to Mot. for Summ. J. Filed by LLS, Ex. F.) Plaintiff then cited an HUD showing that Popular Mortgage

Servicing, Inc. received $22,855.94 indicating that the required amount to settle the home equity loan was paid to Popular Mortgage Servicing, Inc. ("Popular Mortgage Servicing, Inc. Letter," Pl.'s Resp. to Mot. for Summ. J. Filed by LLS, Ex. I.)

In light of the documents cited above, particularly the letters in which CLC and LLS admit that the deficiency does not exist, the court holds that there is a genuine issue of material fact as to the existence of the deficiency.

## V.     LLS - Statute of Limitations

LLS argues that even if plaintiff is able to present evidence sufficient to meet each of the elements of his causes of action, plaintiff's causes of action under the FDCPA, libel, and defamation are limited by the one-year statutes of limitations discussed above. LLS argues that because plaintiff filed his case on May 21, 2010, any of LLS' actions which could give rise to a cause of action under the FDCPA, libel, and defamation which occurred before May 21, 2009, are time-barred. Plaintiff stipulates this point and argues that he "is not seeking any claims arising outside of the one year before the filing of this action." (Pl.'s Resp. to Mot. for Summ. J. Filed by LLS, 21.)

The court again recognizes the one-year statutes of limitations for causes of action arising under the FDCPA, libel, and defamation and holds that all portions of plaintiff's causes of action arising from conduct occurring prior to May 21, 2009, are time-barred.

## **CONCLUSION**

### I.     Judgment as to LLS' Motion

For the reasons stated above, LLS' motion for summary judgment is GRANTED in part

and DENIED in part. The motion, insofar as it applies to the first four causes of action is DENIED because LLS has failed to demonstrate that no issue of material fact exists concerning the status of plaintiff's loan as consumer debt under the FDCPA. The motion as it pertains to the fifth and sixth causes of action is DENIED because there is a genuine issue of material fact as to whether LLS received notice of plaintiff's dispute from a credit reporting agency. The motion as it pertains to the seventh and eighth causes of action is DENIED because a claim that LLS acted with willful intent to injure plaintiff is contemplated throughout the complaint and specifically mentioned in paragraphs 137 and 142 of the complaint, which were incorporated into the seventh and eighth causes of action by reference. The motion as it pertains to the ninth cause of action for claims arising under 15 U.S.C. § 1681s-2(a) is GRANTED because 15 U.S.C. § 1681s-2(a) does not create a private right of action. The motion insofar is it relies upon the existence of a deficiency on plaintiff's loan is DENIED because there is a genuine issue of material fact as to whether the deficiency continues to exist. Finally, the motion as it pertains to the statutes of limitations barring the portions of the causes of action arising under the FDCPA, libel, and defamation are GRANTED and the court holds that claims that arise from conduct occurring prior to May 21, 2009, are time-barred.

## II.     Judgment as to CLC's Motion

For the reasons stated above, CLC's motion for partial summary judgment is GRANTED in part and DENIED in part. The motion as it pertains to the first four causes of action is GRANTED in accordance with the plaintiff's stipulation that he did not have a valid claim against CLC under the FDCPA at oral argument. The motion as it pertains to the ninth cause of

action under the FCRA is GRANTED in part and DENIED in part. The court holds that CLC was implicated in the ninth cause of action in the complaint and cannot be excused from liability by summary judgment. However, the court also holds that any portion of the ninth cause of action arising from 15 U.S.C. § 1681s-2(a) is barred since that subsection of the statute does not create a private right of action. CLC's motion as it pertains to the plaintiff's seventh (libel) and eighth (defamation) causes of action is GRANTED, and the court holds that any portion of plaintiff's libel and defamation claims arising out of conduct occurring prior to May 21, 2009, is barred by the statute of limitations.

### III. Judgment as to Plaintiff's Renewed Motion to Amend Complaint

Plaintiff's renewed motion to amend his complaint is DENIED. The court finds, in light of its decision regarding defendants' motions, that plaintiff's motion is untimely and moot.

IT IS SO ORDERED

DATED this 19th day of February, 2013.

_____
Dee Benson
United States District Judge